UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

Case No. DG 09-00638

JAMES TODD WIERENGA and                     Hon. Scott W. Dales
SUSAN ELIZABETH WOODY,                       Chapter 7

          Debtors,
_____/

WEST MICHIGAN COMMUNITY                      Adversary Pro. No. 09-80634
BANK,

          Plaintiff,

v.

JAMES TODD WIERENGA and
SUSAN ELIZABETH WOODY,

          Defendants.
_____/

**<u>MEMORANDUM OF DECISION AND ORDER</u>**

PRESENT:    HONORABLE SCOTT W. DALES
                United States Bankruptcy Judge

I.    INTRODUCTION

West Michigan Community Bank (the "Plaintiff") filed a complaint seeking damages for the replacement of kitchen cabinets, bathroom fixtures, light fixtures, interior doors, plumbing and carpet (the "Improvements") that Mr. Wierenga admittedly removed while he and his wife, Ms. Woody (collectively, the "Debtors"), were living at 5085 Boyd NE, Grand Rapids, Michigan, after they lost the house through foreclosure, but during the statutory redemption period. The Improvements were removed after the Debtors' Chapter 13 petition date of January 23, 2009, but prior to a Motion to Convert 13 Case to Chapter 7 Case, under 11 U.S.C. §

1307(a), filed October 6, 2009. In addition to damages in the amount of $25,000.00, the Plaintiff seeks a judgment excepting the claim from discharge under 11 U.S.C. § 523(a)(6).

The Plaintiff filed a Motion for Summary Judgment (the "Motion," DN 14), premised largely on the Debtors' statements under oath at the first meeting of creditors. In response, the Debtors contend that there is insufficient evidence as to Ms. Woody, but as to Mr. Wierenga, they appear to concede that the only issue is whether his actions were "malicious." *See* Defendants' Response to Plaintiff's Motion for Summary Judgment (DN 25) at p.4 ("Plaintiff may have established the first and second elements required under 523(a)(6) with respect to Defendant, James Wierenga."). The court heard oral argument on the Motion in Grand Rapids, Michigan on June 2, 2010.

Based largely on the statement of the Debtors taken November 20, 2009 at the § 341 meeting (the "Transcript," DN 25-1), and after reviewing the pleadings and affidavits of the parties, and considering the statements of counsel at oral argument, the court has decided to grant the Motion as to Mr. Wierenga, and deny it as to Ms. Woody for the following reasons.

## II.    JURISDICTION

This court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this bankruptcy court for decision. 28 U.S.C. § 157(a); LCivR. 83.2(a) (W.D. Mich.). This adversary proceeding is a core proceeding because it involves the determination as to the dischargeability of particular debts. 28 U.S.C. § 157(b)(2)(I).

## III.    FACTS

The Debtors owned several properties that have since gone through the foreclosure process, only one of which is at issue in this case. The Debtors obtained a construction loan from

the Plaintiff in the face amount of $298,000.00 to build a new home at 5085 Boyd NE, Grand Rapids (the "Property"). After making several draws from that loan, the Plaintiff stopped authorizing advances for reasons not at issue before the court.

According to Mr. Wierenga's statements at the § 341 meeting of creditors (the "§ 341 Meeting"), the Debtors continued to finance construction of the Property using their credit cards. (Transcript 12-13).  The Debtors spent approximately $70,000.00 on the Improvements using money other than from the Plaintiff's construction loan.

The Plaintiff commenced foreclosure proceedings and eventually received a sheriff's deed on August 27, 2008.  The Debtors continued to reside at the Property slightly beyond the statutory redemption period, which was extended by the filing of their bankruptcy petition. They left the Property on or about April 1, 2009.

Sometime in January or February 2009, Mr. Wierenga, a building tradesman, began tearing out the Improvements he claimed were funded with credit cards and property other than construction loan proceeds received from the Plaintiff.  After Mr. Wierenga removed the Improvements from the Property he sold them to an unknown purchaser for $2,500.00 in cash, along the roadside near his shop.

After the Debtors moved out, the Plaintiff inspected the Property and found it in a state of disrepair, as shown in Plaintiff's Exhibits B through J to the Motion (DN 14-3).  These photographs show damage to drywall and other structures from the removal of the Improvements.  Mr. Wierenga stated at the § 341 Meeting that he removed the Improvements believing he properly owned them. (Transcript 12-13).  At no point in the Transcript, or through other evidence, has the Plaintiff shown that Ms. Woody assisted or otherwise supported Mr. Wierenga in removing the Improvements for sale.

Upon discovering the property damage and missing Improvements, the Plaintiff bid-out the work to replace them.  (Pl. Exh. K and L).  The Plaintiff accepted the low bid and on June 6, 2009, paid $25,000.00 to repair the Property and replace the Improvements. The Plaintiff now seeks to recover that sum as a non-dischargeable debt from both Mr. Wierenga and Ms. Woody.

### IV.    DISCUSSION

To except a debt from discharge under 11 U.S.C. § 523(a)(6), a creditor must prove three elements: (1) the debtor's actions caused injury to the property of another entity; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious.[1]

To prevail on a summary judgment motion, the moving party (here, the Plaintiff) must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Once a moving party has met this burden, the non-moving party must provide specific evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The court must draw inferences in favor of the non-moving party.  *Adickes v. S.H. Kress, Co.*, 398 U.S. 144, 157 (1970).

At oral argument, the Debtors conceded that at the time of the removal of the Improvements, the Plaintiff owned the Property pursuant to a sheriff's deed, and the Debtors were merely in possession during the statutory redemption period.  What is contested, at least by argument, is whether the Improvements became fixtures.

Michigan courts use a three-part test to determine if an item constitutes a fixture: (1) whether the material in question is annexed or attached to the realty; (2) whether the material in question is adapted to the use of the realty; and (3) whether the material in question was intended to be permanently attached to the property. *Peninsular Stove Co. v. Young*, 226 N.W. 225 (Mich.

---

[1] Although the debt arose post-petition, it predates the order for relief in the Chapter 7 case and would therefore be otherwise discharged under 11 U.S.C. § 727(b), but for this action under § 523(a)(6).

1929); *In re Cliff's Edge Skiing Corp.*, 123 B.R. 753, 759 (Bankr. W.D. Mich. 1991). Similarly, the Michigan Supreme Court states that "[i]t is a salutary rule that whatever is affixed to a building by an owner in complement, to facilitate [the building's] use and occupation in general, becomes a part of the realty, though capable of removal without injury to the building." *Kent Storage Co. v. Grand Rapids Lumber Co.*, 214 N.W. 111, 112-13 (Mich. 1927).

The court finds that the Improvements in this case were all at some point attached to the Property. The images in Plaintiff's Exhibits B through J show damage to drywall caused by removal of the Improvements. Likewise, the Plaintiff's Affidavit establishes that the materials were adapted for use in the Property. Furthermore, the Debtors have offered no response by affidavit or as otherwise required by Rule 56, to raise a question of fact necessitating a trial on this issue. The removed Improvements are not of the same ilk as furniture, curtains, small appliances or other clearly movable personal property. To the contrary, they constitute more permanent accessions to the Property and are therefore fixtures under Michigan law, title to which transferred to the Plaintiff at the time of the foreclosure sale in August 2008.

An act is willful under § 523(a)(6) if it was done with the "actual intent to cause injury." *In re Fox*, 370 B.R. 104, 119 (6th Cir. B.A.P. 2007). Intent is present where a person "desires to cause the consequences of the act, or believes that the consequences are substantially certain to result from it." *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999) (citing RESTATEMENT 2d OF TORTS § 8A at 15 (1964)). It is not enough for a person merely to intend an act that results in injury; the person must intend or be substantially certain that the injury will occur. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The willfulness element is designed to separate negligent or inadvertent acts from deliberate and intentional ones, and to ensure that the conduct in question falls within the ambit of an intentional tort. *Id.*

In this case, Mr. Wierenga admitted to removing the Improvements from the Property in early 2009, with the intent to sell them. (Transcript 12). What is less than obvious, however, is whether Mr. Wierenga removed them with the intent to cause the reduction in Property value that resulted from the removal. The Plaintiff's exhibits show, and Ms. Woody acknowledged under oath, that Mr. Wierenga had proper notice of the foreclosure sale. (Transcript 11). Furthermore, Mr. Wierenga admitted he knew the Property was owned by the Plaintiff at the time he removed the Improvements. Therefore, the court finds that this, together with Mr. Wierenga's admission that he intended to remove the Improvements in order to sell them, evidences his knowledge that the removal of the Improvements would reduce the value of the Property. Consequently, there is no genuine issue of fact that the removal was willful within the meaning of Section 523(a)(6).

In addition, the removal of the Improvements must be malicious. Malice is defined as a "wrongful act, done intentionally, without just cause or excuse." *Tinker v. Colwell*, 193 U.S. 473, 485-86 (1904). More specifically, malice does not require any ill will or specific intent to do harm, only to do an act without just cause or excuse, but that is beyond negligence or recklessness. *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986); *Geiger*, 523 U.S. at 63.

Mr. Wierenga argues that he mistakenly thought he owned the Improvements because he paid for them with money he did not borrow from the Plaintiff. However, a mistake of law is not a sufficient excuse to counter a clear intent to remove and sell the Plaintiff's property. The Supreme Court, in a different context, recently reiterated the familiar adage that ignorance of the law is no excuse:

> We have long recognized the "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally." *Barlow v. United States*, 7 Pet. 404, 411, 8 L.Ed. 728 (1833) (opinion for the Court by Story, J.); see also *Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted

Page 7 of 9

in the American legal system"). Our law is therefore no stranger to the possibility that an act may be "intentional" for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law.

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, __ U.S. __, __, 130 S.Ct. 1605, 1611-1612 (2010).

The court is not persuaded by the Debtors' citation to *In re McGuckin*, 418 B.R. 251, 257 (Bankr. N.D. Ohio 2009), or *In re Feist*, 225 B.R. 450 (Bankr. D.N.D. 1998). In contrast to the intentional removal of the Improvements in this case, the court in *McGuckin* could not "discern on the part of the Debtor anything more than neglect, albeit serious neglect, concerning the Plaintiff's property." *McGuckin*, 418 B.R. at 256.  In *Feist,* the court found that the debtor removed the barn fixtures to facilitate the Bank's sale of its collateral, not to pocket the proceeds for himself. *Feist*, 225 B.R. at 456.  The evidence of the debtor's role in damaging other property in that case, such as the chicken coop, was inconclusive. *Id.*  Here, with respect to Mr. Wierenga, his role in removing the Improvements is not disputed, and the question is simply whether the court accepts his purported belief that he owned the Improvements as appropriate justification or excuse.  Under the circumstances, even accepting Mr. Wierenga's version of the facts, the court cannot find "just cause or excuse" for the intentional removal of the Improvements.

Even if the Debtors had shown that they purchased the Improvements with funds other than the building loan, the Improvements were fixtures attached to the Property, which rendered them part of the mortgaged real estate.  The source of the funds used to acquire the removed Improvements is immaterial.  Indeed, after a lender disburses loan proceeds, title to the proceeds passes to the borrower, and in the absence of a security agreement, the lender has no interest in the funds, only a claim for repayment under the note.  The Debtors presumably purchased the concrete, lumber, bricks or roofing materials with borrowed funds to which they were entitled.

Their argument that they purchased the Improvements with credit card proceeds, simply another kind of loan proceeds, would also license them to remove the concrete, framing, and roofing purchased with the construction loan proceeds from the Plaintiff. The argument is specious and fails to raise a genuine issue of fact as to Mr. Wierenga's supposed justification or excuse for removing the Improvements.

In considering Ms. Woody's liability under § 523(a)(6), the Plaintiff relies on *In re Sintobin*, 253 B.R. 826 (Bankr. N.D. Ohio 2000). The *Sintobin* court imputed liability in a § 523(a)(6) case to the tenant-parents of children who vandalized rental property. The court stated that a debtor need not personally cause the harm; encouragement, or an omission as to the damage could also constitute willful and malicious injury under § 523(a)(6). *Id.* at 830.

To implicate Ms. Woody, the Plaintiff relies heavily on a statement made by Mr. Wierenga at the § 341 Meeting where he says, "*we* removed [the Improvements] prior to moving out." (Transcript 11, emphasis added). Even granting the possibility that Ms. Woody could be liable using the theory in *Sintobin*, the Plaintiff has not met its burden under Rule 56(c) to show that it is entitled to relief against her as a matter of law. Furthermore, all other evidence offered by the Plaintiff as to willfulness, malice, and injury relates solely to Mr. Wierenga, leaving insufficient evidence at this early stage of the proceeding against Ms. Woody.

V.   CONCLUSION

Having reviewed the facts and law presented before the court, there is no genuine issue of fact as to Mr. Wierenga's liability under § 523(a)(6), and the Plaintiff is entitled to judgment as a matter of law. The removal of the various Improvements qualified as a willful and malicious injury to the property of another, and the uncontested evidence in support of the Motion permits the court to find that the Plaintiff suffered damages in the amount of $25,000.00. The Supreme

Court has noted that metaphysical doubt should not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 260 (1986).  Here, the Plaintiff's right to relief against Mr. Wierenga is clear. The Plaintiff, however, has not offered sufficient evidence to inculpate Ms. Woody under § 523(a)(6), so the court will deny the Motion as to her.

Because the court has not resolved all claims and defenses of the parties, and because there is no reason to direct otherwise, the court cannot enter judgment at this time. *See* Fed. R. Civ. P. 54(b) (judgment involving multiple parties); Fed. R. Civ. P. 58(a)(separate judgment).

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion is GRANTED as to Mr. Wierenga and DENIED as to Ms. Woody.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Daniel R. Kubiak, Esq. and John A. Potter, Esq.

**IT IS SO ORDERED.**            Scott W. Dales
United States Bankruptcy Judge

**Dated: June 14, 2010**